United States Court of Appeals,

Fifth Circuit.

No. 96-10818.

Catherine A. GHIGLIERI, in her official capacity as Texas Banking Commissioner, Plaintiff-Appellee,

v.

Eugene A. LUDWIG, in his official capacity as United States Comptroller of the Currency; Commercial National Bank of Texarkana, Texarkana, Texas, Defendants-Appellants.

Oct. 29, 1997.

Appeals from the United States District Court for the Northern District of Texas.

Before REAVLEY, JOLLY and BENAVIDES, Circuit Judges.

PER CURIAM:

The questions presented in this appeal are whether a national bank that relocated its main office across state lines before June 1, 1997, could retain its pre-existing branches in its former home and whether it could establish a new branch at the site of its former main office. The district court concluded that Commercial National Bank of Texarkana could do neither. In light of this court's recent decision in *Ghiglieri v. Sun World National* Association, 117 F.3d 309 (5th Cir.1997) and Arkansas law, we vacate and remand for entry of judgment in favor of appellants.[1]

I.

In 1994, Commercial National Bank of Texarkana ("CNB" or "the bank") applied to the Office of the Comptroller of the Currency ("the Comptroller" or "the OCC") to relocate its main office from Texarkana, Arkansas to Texarkana, Texas. At that time, the bank also operated two branch offices and an automated teller machine in Texarkana, Arkansas, and a third branch office in Fouke, Arkansas. When the bank requested approval for the relocation of its main office, it simultaneously sought the Comptroller's authorization to establish a new branch at its soon-to-be former main office in Texarkana, Arkansas. The Comptroller approved both applications over the

---

[1]The Commissioner's motion to strike the attachments to the amicus curiae brief of the Consumer Bankers Association and Bankers Roundtable is granted.

objections of the Texas Banking Commissioner ("the Commissioner") and the Arkansas State Bank Department.[2]

The Commissioner brought suit against the Comptroller and CNB in federal district court, seeking review of the Comptroller's decision and asking for declaratory and injunctive relief. All parties filed motions for summary judgment. The Commissioner moved for summary judgment on the grounds that (1) CNB could not relocate its main office across state lines, even if the move was within the 30-mile limit established by 12 U.S.C. § 30(b); (2) procedural defects in CNB's applications should have defeated their approval; (3) CNB's temporary main office was actually a branch office; (4) CNB could not retain its branches after relocating its main office to Texas; and (5) CNB co uld not create a new branch at its former main office in Arkansas. The district court granted summary judgment to the Commissioner on the fourth and fifth grounds. The district court's order set aside the Comptroller's decisions with respect to the retention of CNB's pre-existing branches and its establishment of a new branch at the site of its former main office; enjoined CNB's banking operations in the State of Texas; and enjoined the Co mptroller from approving similar relocation applications.

## II.

Whether a national bank that relocated its main office across state lines before June 1, 1997, could retain its pre-existing branches in its former home state was resolved squarely by this court in *Ghiglieri v. Sun World,* 117 F.3d at 313-15. In that case, we concluded that the National Bank Act, 12 U.S.C. § 21 *et seq.,* is silent with respect to the retention of branches following a main office relocation and that the Comptroller's interpretation of the statute to allow retention of pre-existing branches was reasonable. Accordingly, under the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we deferred to the Comptroller's interpretation. We are bound by our holding in *Sun World.* Accordingly, CNB can relocate its main office from Texarkana, Arkansas to Texarkana, Texas and

[2]The Arkansas State Bank Department was not a party to the district court proceedings nor is it a party on appeal.

retain its pre-existing Arkansas branches, and the district court erred in concluding to the contrary.

## III.

We next address the issue of whether CNB could establish its former main office as a new branch. Section 36(c) governs the resolution of this issue. *See* 12 U.S.C. § 36(c); *Sun World,* 117 F.3d at 315. Under that provision, a national bank can establish and operate a new branch "[w]ithin the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question." 12 U.S.C. § 36(c)(1). Under this court's analysis in *Sun World,* CNB is situated in both Texas and Arkansas, and the creation of a new branch in Texarkana, Arkansas is governed by the law applicable to Arkansas state banks. 117 F.3d at 316 (citing *Seattle Trust & Sav. Bank v. Bank of Calif.,* 492 F.2d 48 (9th Cir.1974)).

The district court concluded that CNB could not establish its former main office as a branch office under Arkansas law. This conclusion was based in part on the premise that CNB was not entitled to retain its pre-existing Arkansas branches after relocating its main office. Our decision in *Sun World* established that that premise is faulty and that the bank can indeed retain its pre-existing branches. But that does not end the inquiry in the Comptroller's favor. We still must determine whether Arkansas branching law would allow a state bank in CNB's position to establish a new branch in Texarkana, Arkansas.

The Comptroller concluded that two provisions of Arkansas law permitted the establishment of CNB's former main office as a new branch. The first allows an Arkansas state bank to establish a branch "anywhere within the county in which the establishing bank's principal banking office is located." ARK.CODE ANN. § 23-32-1202(b)(1).

The Comptroller relied on the Third Circuit's reasoning in the *Seattle Trust* case to conclude that the county of CNB's "principal banking office" for the purpose of Arkansas branching law was Miller County, Arkansas, where CNB's former main office and pre-existing branches were located. In *Seattle Trust,* the Third Circuit reviewed the Comptroller's construction of a Washington branching statute that mirrors Section 23-32-1202(b)(1) of the Arkansas Code. 492 F.2d at 52. The

Washington statute restricted a state bank to branching in "the city or town in which its principal place of business is located...." *Id.* The court concluded that a national bank's principal place of business under this statute was Seattle, Washington, even though the bank's corporate headquarters were in San Francisco, California. 492 F.2d at 52-53. The Third Circuit agreed with the Comptroller that "principal place of business," as used in Washington banking law, should be construed to mean "the principal place of business within the State of Washington." *Id.* at 52. As the *Seattle Trust* court explained, "There is no such thing as a Washington state bank with its principal place of business outside Washington." *Id.* at 52-53. The Comptroller in this case reasoned that there is no such thing as an Arkansas bank with its principal banking office outside of Arkansas, and, accordingly, that Miller County, Arkansas, where all CNB's facilities were located before the main office relocation, must be the location of its principal banking office within Arkansas.

We need not, however, adopt the Third Circuit's analysis on this point because, as the Comptroller concluded, the propriety of the conversion of CNB's former main office into a branch office is answered plainly by Section 23-32-1202(b)(2) of the Arkansas Code, which provides:

> A bank which relocates its principal banking office may continue to use its former principal banking office location as a full service branch and customer-bank communication terminal so long as the use as a banking facility is uninterrupted.

ARK.CODE ANN. § 23-32-1202(b)(2). Because the Comptroller on March 8, 1995, simultaneously allowed CNB to relocate its main office to Texarkana, Texas and to establish its former main office in Arkansas as a branch, there is no question that the use of this office as a banking facility was uninterrupted. The district court should have upheld the Comptroller's approval of the establishment of a new branch at the site of CNB's former main office based on Section 23-32-1202(b)(2).

IV.

Accordingly, we VACATE the decision of the district court and REMAND to the district court for entry of judgment in favor of the Comptroller and CNB.

REAVLEY, Circuit Judge, concurring:

I concur in the judgment because I accept the construction of 12 U.S.C. § 36(c) to permit the establishment of branches within Arkansas when branches, though now not the home office, have

been located there.  The statute allows this "within the state in which said association is situated...."  A prior panel has agreed with the Ninth Circuit and the Comptroller that this describes situated branches as well as main office.  I do not disagree and can read the statute to allow branches to be retained where new branches could be established.  My esteemed colleagues are in error, however, when they say that § 36 is silent with respect to the retention of branches after relocation of the main office.  Section 36 begins:  "The conditions upon which a national banking association may retain or establish and operate a branch or branches are the following:"  We are required to find the authorization in the language of § 36(c).  Because I agree that we can, I concur.